# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

SHIRLEY MACK,                    :

     Plaintiff,               :
                                        Case No. 3:12cv00115
 vs.                              :
                                        District Judge Thomas M. Rose
CAROLYN W. COLVIN,               :      Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,         :

     Defendant.               :

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    Introduction

Plaintiff Shirley Mack worked full-time for many years as a licensed practical nurse in a nursing home (August 1983 to March 2000). Various health problems – including back, neck, pain, and right-shoulder pain, etc. – ended her full-time employment. She later applied for Disability Insurance Benefits asserting that on March 24, 2000 and thereafter, she was under a "disability" due to a "plate" in her neck, a surgically fused spinal column, pain in her shoulders and neck, depression, and anxiety. (Tr. 141).

An Administrative Law Judge for the Social Security Administration, Melvin A. Padilla, denied Mack's application on two separate occasions based on his conclusion that

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

she is not under a "disability" as defined by the Social Security Act. United States District Judge Walter Herbert Rice vacated each administrative decision and remanded the matter for further proceedings.

During the most recent administrative proceedings on remand, Administrative Law Judge Amelia G. Lombardo collected additional medical evidence, held an evidentiary, and issued a decision finding that Mack was under a benefits-qualifying disability beginning on January 1, 2009, but not before. (Tr. 696-715).

Mack brings the present case challenging ALJ Lombardo's non-disability finding. Mack mainly contends that she was under a benefits-qualifying disability beginning on March 24, 2000 through January 1, 2009. The case is before the Court upon Mack's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Mack's (Doc. #12), the administrative record, and the record as a whole.

Mack seeks an Order awarding her Disability Insurance Benefits. The Commissioner seeks an Order affirming ALJ Lombardo's decision. The Court has subject matter jurisdiction over this case and controversy. *See* 42 U.S.C. §405(g).

## II.   "Disability" Defined

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses those who suffer from a medically determinable physical or mental impairment

2

severe enough to prevent them from engaging in substantial gainful activity. *See* 42 U.S.C. §
423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70. An applicant for Disability Insurance
Benefits bears the ultimate burden of establishing that he or she is under a "disability." *Key
v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human
Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361
(6th Cir. 1978).

### III.   Background

Mack was over age 50 when she applied for Disability Insurance Benefits (DIB) and
on her alleged disability onset date (March 24, 2000). She was therefore considered a person
"closely approaching advanced age" under Social Security Regulations. 20 C.F.R.
§404.1563(d). She turned age 55 in May 2003, thus becoming a "person of advanced age"
under Social Security Regulations. 20 C.F.R. §404.1563(e). On the date of ALJ's
Lombardo's September 2011 decision, Mack was 63  years old. She has a high school
education and training as a licensed practical nurse.

ALJ Padilla held the first administrative hearing in 2003. Mack testified that she was
working part time as a licensed practical nurse. The work, however, was infrequent, only
one to three days or sometimes fours days per month. (Tr. 47). Her employer often asked her
to work, but she was able to work only one time out of ten requests. (Tr. 70). Depression
prevented her from working more often. *Id*. She also worked much slower than when she
worked full time. Her tasks included giving patients medications and sometimes helping
them get dressed. (Tr. 48). When a patient wanted to be moved from a bed to a wheelchair,

3

Mack needed help. She explained, "I ... try to find someone that can do it for me or at least

be with me. I never do it by myself." (Tr. 49). Due to her neck problems, Mack also had a lot

of trouble pushing the "med cart" by herself because it was too heavy. (Tr. 50). She

described her neck pain as "deep, deep, sometimes burning, sometimes a real thick type of

pain ...." *Id*.

Psychologist Dr. Buban reviewed the administrative record and listened to Mack's

testimony during ALJ Padilla's first hearing. Dr. Buban then testified:

> [S]he is working at least part-time right now. So I don't see any limitations in
> social functioning. I don't hear any of that. They keep calling her, wanting her
> to go back to work. Obviously she must be socially appropriate when she's
> there. She must relate well to supervisors if she can say no nine out of ten
> times, and they still call her. She must be appropriate with the clientele and co-
> workers, so I don't see any problem there.... I don't see any limitation in her
> ability to perform complex or detailed tasks. She's still functioning at the level
> she was functioning before. In terms of memory and concentration, those
> easily can be due to the medications that she's on, and having nothing to do
> with depression or, you know, any physical condition that she has. So any
> difficulties in concentration or attention are going to be mild. You know, if
> she's – if she has a significant amount of pain and is experiencing a significant
> amount of emotional distress, then it's possible that it would be at the
> moderate range. But even in her testing – in her objective testing – there's no
> consistent result to indicate any problems with memory, concentration, or
> attention.

(Tr. 77). Dr. Buban further testified that Mack's "primary disability is not

psychological/psychiatric, and that is my opinion that, aside from her pain condition, these –

the depression would not be – would not significantly interfere with her work performance,

as it doesn't now." (Tr. 80). Dr. Buban noted, "In summation..., I see the depression as a

contributing factor, certainly probably increasing her level of distress...." (Tr. 79-80).

4

In his first decision, ALJ Padilla credited Dr. Buban's opinion without providing any explanation in contravention of 20 C.F.R. §404.1527(f)(iii) and Social Security Ruling 96-6p. (Tr. 440-41, 454). The error was not harmless, and for this and other reasons, a remand was warranted. (Tr. 440-41, 454-61).

Three years later, during ALJ Padilla's second hearing in August 2006, no medical expert testified. Mack testified that she was not working part time. (Tr. 647). The most she had worked was when she had previously worked part time in the nursing home, twice a month. (Tr. 648). After she worked, she would go straight to bed. She testified, "And I stay in bed after my last eight hour[s]. I have to stay. It's Saturday or Sunday. And then I come home and I'm in bed until Tuesday after my last day.... "It's almost Sunday night – Sunday evening, all day Monday. And then I usually get out of bed on Tuesday." (Tr. 662-63).

Mack woke up with a headache almost every morning along with pain in her neck, across her shoulders, and down her arms. She described the pain is as a "deep dull throbbing .... A deep hurt. And this headache goes along with it." (Tr. 649). As to depression, she cried daily "at just the least little thing." (Tr. 651). She had no appetite and had difficulty sleeping each night, usually waking after three hours. She took medications – Ambien, Flexeril, and Topoman – at bedtime. (Tr. 652-53). She took Methadone for pain relief. Despite taking Zimbalta for depression, she remained "so depressed." (Tr. 653).

Mack testified that during an average day, she could walk one-half hour to two hours before needing to sit. (Tr. 655). She could stand "a couple of hours." *Id*. She hurts more when she sits and can sit for only 20 to 30 minutes before needing to stand and move about.

5

On a bad day, about half her days, she could stand and walk 10 to 15 minutes, then she would return to bed. (Tr. 660-61).

Mack's attorney has provided a detailed and helpful summary, particularly of Mack's mental-health records. (Doc. #7, PageID at 45-49). In light of Mack's summary, other information in the administrative record, and the prior judicial and administrative summaries, a further detailed review is presently unwarranted. *See* Doc. #7, PageID at 23-28, 43-49; Tr. 416-24, 700-10, 733-40.

## IV.   ALJ Lombardo's Decision

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential evaluation answers five questions:

1.   Has the claimant engaged in substantial gainful activity?

2.   Does the claimant suffer from one or more severe impairments?

3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4.   Considering the claimant's residual functional capacity, can she perform her past relevant work?

5.   Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available in the national economy?

20 C.F.R. § 404.1520(a)(4); *see Ealy v. Comm'r of Social Sec.*, 594 F.3d 504, 512 (6th Cir.

6

2010).

ALJ Lombardo's pertinent findings began at Step 2 of the sequential evaluation where she concluded that Mack has the severe impairments of degenerative disc disease of the cervical spine with the residual effects of spinal surgeries. (Tr. 700). ALJ Lombardo found no severe mental impairment, even though ALJ Padilla had previously concluded on two separate occasions that Mack had severe mental impairments. ALJ Padilla found in August 2003 that Mack had the severe mental impairment of "affective disorder with features of depression and anxiety that significantly affect her ability to perform basic work activity." (Tr. 29). In June 2007, ALJ Padilla found that Mack had the severe mental impairment of "chronic pain disorder and affective disorder with features of depression and anxiety." (Tr. 416).

ALJ Lombardo concluded at Step 3 that Mack did not have an impairment or combination of impairments that met or equaled one in the Listings. (Tr. 710).

At Step 4, the ALJ found that before January 1, 2009, Mack retained the residual functional capacity to perform light work without limitations.[2] (Tr. 710-11). Beginning on January 1, 2009, Mack could perform only sedentary work, according to the ALJ.[3] (Tr. 715).

As to possible limitations due to mental health difficulties, the ALJ wrote at Step 4:

The necessity for non-exertional limitations associated with mental

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...."  20 C.F.R. §404.1567(b).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." §404.1567(a).

7

> impairment has been rebutted (see Finding No. 3 [Step 2]). Similarly, it is found that the necessity for any additional limitations that would preclude the full range of light exertion has not been established.

(Tr. 711). The ALJ also concluded at Step 4 that Mack was unable to perform her past relevant work as a licensed practical nurse (medium work). (Tr. 716).

At Step 5, the ALJ concluded that before January 1, 2009, given Mack's residual functional capacity for the full range of light work, the Grids dictated a finding of not disabled.  (Tr. 716; citing Medical-Vocational Guidelines, 20 C.F.R. Subpart P, Appendix 2, §§202.07, 202.15).

Applying the Commissioner's Listing of Impairments, the ALJ ultimately concluded that Mack was not under a disability before January 1, 2009, but she was under a disability beginning on January 1, 2009 and was then eligible for Disability Insurance Benefits. (Tr. 716-17).

## V.     Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th

8

Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"  *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..."  *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r. of Social Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## VI.  <u>Discussion</u>

Mack contends that the ALJ failed to follow the Court's remand Order at Step 2 of the sequential evaluation by finding that she did not suffer from a severe mental impairment. Mack further argues that by finding that she did not have a severe mental impairment, the ALJ circumvented the requirement to consider the combination of Mack's severe and non-severe impairments, particularly when assessing her residual functional capacity.

9

The Commissioner contends that the ALJ did not err at Step 2 because the Court's remand decision never discussed, weighed, or analyzed whether any of Mack's impairments were severe; instead, the Court merely recognized that ALJ Padilla previously found Mack had "severe impairments of vertobrogenic disorder in the cervical spine with chronic pain and residuals of surgery and affective disorder with features of depression and anxiety." (Tr. 727). Because of this, according to the Commissioner, the Court did not preclude the ALJ from reaching a different conclusion about which of Mack's impairments were severe.

In his remand Order, Judge Rice provided the following detailed instruction:

> [T]he Administrative Law Judge is to properly evaluate Plaintiff's complaints of pain, by applying the rules, regulations and pertinent case law in the assessment of pain and, further, to consider the results of said assessment in combination with the Plaintiff's severe impairments of vertebrogenic disorder in the cervical spine with features of depression and anxiety.

(Tr. 728).

Social Security ALJs are not free to ignore judicial Orders:

> In some Social Security cases, district courts will include detailed instructions concerning the scope of the remand and the issues to be addressed. In such cases, "[d]eviation from the court's remand order in subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.' *Sullivan v. Hudson,* 490 U.S. 877, 886, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). *See also Mefford v. Gardner,* 383 F.Ed 748, 758 (6th Cir.1967) (noting "the general rule that, on the remand of a case after appeal, it is the duty of the lower court, or the agency from which appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions."). These cases stand for the proposition that the administrative law judge may not do anything expressly or impliedly in contradiction to the district court's remand order. These cases do not preclude the ALJ from acting in ways that go beyond, but are not inconsistent with, the district court's opinion....

*Hollins v. Massanari*, 49 Fed. App'x. 533, 536 (6th Cir. 2002).

The remand Order in this case instructed the ALJ to evaluate Mack's pain by considering both her physical impairments combined with "features of depression and anxiety." (Tr. 728). Rather than do this, the ALJ found no severe mental impairment and did not consider the effects on her levels of pain caused by the combination of Mack's physical and mental impairments. "[T]here was, in reality, no combined treatment in the ALJ's subjective symptom analysis or elsewhere." *Blankenship v. Bowen*, 874 F.2d 1116, 1123-24 (6th Cir. 1989). While the remand Order did not specifically instruct the ALJ to reconsider, or preclude her from reconsidering, whether Mack was under a severe mental impairment, Judge Rice focused on the relationship between Mack's chronic pain and her mental health issues. Specifically, Judge Rice explained:

> Given that the Administrative Law Judge [Padilla] found, on remand, that the claimant "has severe impairments of vertegbrogenic disorder in the cervical spine with chronic pain and residuals of surgery and affective disorder with features of depression and anxiety." It is clear that the relationship between said pain and her mental health issues is of paramount importance in evaluating whether she is disabled within the meaning of the Social Security Act. Indeed, such was the reason why the initial remand to the Defendant Commissioner, for the purpose of analyzing that pain, within the rules, regulations, and applicable case law, was ordered by the Court.

(Tr. 727)(emphasis added). ALJ Lombardo's finding 2 at Step that Mack did not have a severe mental impairment was inconsistent with, and ignored or overlooked, Judge Rice's explicitly stated concern over the need to address the relationship between Mack's pain and the combination of her physical and mental-health issues. This was error even though the Court did not provide a separate, written analysis of whether or not Mack had a severe

11

mental impairment under the *de minimis* standard applicable at Step 2. *Higgs v. Bowen*, 880

F.2d 860, 862 (6th Cir. 1988)("Under the ... *de minimis* view, an impairment can be

considered not severe only if it is a slight abnormality that minimally affects work ability

regardless of age, education, and experience.").

However, the ALJ's error at Step 2 might be "legally irrelevant" because "a finding

of severity as to even one impairment clears the claimant of step two of the analysis and

should cause the ALJ to consider both the severe and non-severe impairments in the

remaining step." *Simpson v. Comm'r of Soc. Sec.*, 344 Fed.Appx. 181, 190 (6th Cir.

2009)(citing *Anthony v. Astrue*, 266 Fed.Appx. 451, 457 (6th Cir. 2008)(citing, in turn,

*Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). This

possible legal irrelevancy does not apply to ALJ Lombardo's decision due to the failure to

consider the combination of Mack's severe physical impairments and non-severe mental

impairments when assessing her residual functional capacity and pain at Step 4. On this

point, *Simpson v. Comm'r of Soc. Sec.*, 344 Fed.Appx. 181, 191 (6th Cir. 2009) leads the

way.

The ALJ in *Simpson* concluded, like ALJ Lombardo, that the claimant had severe

physical impairments. The ALJ was therefore required to consider the severe physical

impairments with the mental impairments (adjustment disorder with anxiety and depression)

when assessing the claimant's residual functional capacity at Step 4. *Simpson*, 344

Fed.Appx. at 191. The Court of Appeals explained:

> Instead, the ALJ held that "based on my evaluation of the claimant's

12

mental impairment as not a severe impairment ... she does not have any
limitations stemming from that mental impairment." The ALJ's finding is
contrary to controlling law.

*Id*.

ALJ Lombardo's decision is contrary to the same controlling law discussed in

*Simpson*. *Id*. at 90-91. When assessing Mack's residual functional capacity, ALJ Lombardo

did not provide any meaningful consideration of Mack's mental impairments combined with

her severe physical impairments. The ALJ instead assessed only Mack's physical

impairments by relying on the Step-2 finding that Mack had no severe mental impairment.

The ALJ concluded without further discussion of Mack's mental impairments at Step 4,

"The necessity for non-exertional limitations associated with mental impairment has been

rebutted (see Finding No. 3 [Step 2])." (Tr. 711). In this manner, as in *Simpson*, ALJ

Lombardo's decision neglects to adhere to the following mandate: "[o]nce one severe

impairment is found, the combined effect of all impairments must be considered, even if

other impairments would not be severe." *Simpson*, 344 Fed.Appx. at 191 (quoting *White v.

Comm'r of Soc. Sec*., 312 Fed.Appx. 779, 787 (6th Cir. 2009)(other citations omitted);

*Walker v. Sec'y of Health & Human Servs*., 980 F.2d 1066, 1071 (6th Cir. 1992). Or, in the

mandatory language of the Regulations:

> We will consider all of your medically determinable impairments of
> which we are aware, including your medically determinable impairments that
> are not "severe" ... when we assess your residual functional capacity.

20 C.F.R. §404.1545(a)(2).

This was neither a harmless error nor a minor misstep by the ALJ. Not one treating or

13

evaluating mental-health expert opined that Mack did not have a severe mental impairment.

Additionally, the record contains the opinions of numerous mental-health experts who

concluded that Mack was more than mildly impaired in various areas of her mental-work

abilities. Those opinions, if credited even in part, would show that Mack met the "*de*

*minimis* hurdle" at Step 2 or, in other words, she had more than "a slight abnormality that

minimally affect[ed]" her work ability.  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

And those opinions would likewise play a significant role at Step 4, where it was – in Judge

Rice's words – " clear that the relationship between [Mack's] pain and her mental health

issues is of paramount importance in evaluating whether she is disabled within the meaning

of the Social Security Act." (Tr. 727).

Even the ordinarily cautious ALJ Padilla twice concluded at Step 2 that Mack had

severe mental impairments, and ALJ Padilla also included mental-work limitations in his

assessment of her residual functional capacity. Although ALJ Padilla's prior decisions in

this case have been vacated and thus do not carry the force of law, his conclusions tend to

show that in light of the evidence of record, ALJ Lombardo's error at Step 4 was not

harmless. *Cf. Wilson*, 378 F.3d at 546 ("[A] procedural error is not made harmless simply

because [the aggrieved party] appears to have had little chance of success on the merits

anyway.")(citations omitted)).

ALJ Padilla's decisions aside, the record contains numerous medical-source opinions

that stand in stark contrast to ALJ Lombardo's conclusion that Mack had only mild

limitations in her mental-work activities – specifically, her activities of daily living, social

14

functioning, and ability to maintain concentration persistence, or pace. (Tr. 709).

Consequently, those opinions reveal that the ALJ's failure to consider Mack's physical and

mental impairments in combination was not harmless error. For example, psychologist Dr.

Benninger reviewed the record in May 2001 at the request of the Ohio Bureau of Disability

Determinations. (Tr. 243-60). He opined that Mack had a moderate restriction in her daily

activities and in her ability to maintain concentration, persistence, or pace. (Tr. 253). He also

opined that Mack was moderately limited in her ability to understand, remember, and carry

out detailed instructions; and moderately restricted in her ability to maintain attention and

concentration for extended periods. (Tr. 257). Dr. Benninger also explained that Mack could

"carry out tasks in situations where duties are static and instructions can be explained. Can

maintain concentration & attention to do work involving one or 2 steps." (Tr. 259). His

assessment was affirmed on October 19, 2001, by nonevaluating psychologist, Dr. Karen

Stailey. (Tr. 243)

   Psychologist Jerry Flexman first evaluated Mack in July and August 2001. Mack

began seeing a mental-health counselor in July 2001. In August 2002, Dr. Flexman opined:

> The severity of Ms. Mack's depression and anxiety, with the fatigue and
> difficulty tolerating her chronic pain level, would greatly limit her ability to
> function in a normal capacity in a work setting. She is unable to sustain
> adequate attention and concentration to even simple tasks. She is unable to
> follow one or two step instructions. Ms. Mack at this time, is unable to
> withstand the normal stressors and pressures in a job setting.

(Tr. 337). Dr. Flexman further opined that Mack had poor to no ability to deal with work

stresses, maintain attention/concentration, behave in an emotionally stable manner, relate

predictably in social situations, demonstrate reliability, and understand, remember, and carry out detailed and complex job instructions. (Tr. 338-40). Mack continued to see a counselor in Dr. Flexman's office through at least November 14, 2003. (Tr. 631-32).

Mack began seeing psychiatrist Dr. Birdi in July 2002. (Tr. 383-84). In January 2003, Dr. Birdi completed interrogatories. (Tr. 371-74). He indicated that while Mack was not prohibited from performing many of the mental demands of sustained employment, her impairments prevented her from performing several other significant functions. Namely, he found that she would be unable to behave in an emotionally stable manner; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday or workweek without interruption from psychologically and/or physically based symptoms and perform at a consistent pace without unreasonable and/or physically based symptoms and perform at a consistent pace without unreasonable numbers and length of rest periods. (Tr. 372-73).

Psychologist Dr. Martin evaluated Mack in August 2002, at the request of her attorney. (Tr. 319-40). Dr. Martin also reviewed all the records in the file at the time. (Tr. 319-320). He observed pain behaviors with intermittent eye contact. Her affect was depressed and her mood was "severely depressed, anhedonic, apathetic, irritable, and withdrawn." (Tr. 322). On the Beck Depression Inventory she scored in the severe depression range. (Tr. 324). The Minnesota Multiphasic Personality Inventory (MMPI-2) was valid and indicated that women with similar results "are frequently perceived as

16

expressing significant feelings of depression, apathy, and hopelessness..., with feelings of insecurity and inadequacy, as over-controlled, and … persistent difficulties expressing their feelings toward others in a direct manner." *Id*. Dr. Martin concluded that Mack suffered from Major Depressive Disorder, Recurrent type. (Tr. 326). And he indicated that she had a Pain Disorder associated with both psychological factors and a general medical condition and Psychological Factors affecting physical condition. (Tr. 325). He noted that Mack could not perform any of the mental activities needed for work except one. (Tr. 327-329)

In January 2003, Dr. Payne, psychologist, evaluated Mack at ALJ Padilla's request. (Tr. 385-92). Dr. Payne observed that she was sad and tearful throughout the evaluation. (Tr. 386). Her stream of thought was somewhat disjointed and thought associations were sometimes tangential. Her demeanor was apathetic and dysphoric. He observed that she was fidgety and restless. She was distracted at times. (Tr. 387). Mack again completed the MMPI-2, and Dr. Payne recognized that the resulting profile was valid and that it suggested "depression, anxiety, and tension." (Tr. 388). Dr. Payne opined that Mack's ability to relate to others, maintain attention and concentration for normal employment, and deal with work stress were all markedly impaired. *Id*. And Mack had a marked impairment in her ability to interact appropriately with the public, supervisors, and co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. (Tr. 392).

In March 2006, Plaintiff was evaluated by Dr. Bienenfeld, a psychiatrist with the Department of Psychiatry at Wright State University. (Tr. 515-519). Dr. Bienenfeld

17

observed that Mack was tearful throughout the interview. Her mood was depressed and anxious. She lost track of questions she was answering. (Tr. 517). Results of testing, including the Beck Depression Inventory and the Beck Anxiety Inventory, revealed severe depression and moderately severe anxiety. Dr. Bienenfeld's diagnosis was Major Depression, recurrent and severe; Generalized Anxiety Disorder; and Pain Disorder. He concluded that Mack's depression and anxiety would severely impair her ability to withstand the stresses and pressures of ordinary work activity. He stated, "Her sensitivity to criticism is overwhelming. Her poor concentration inhibits her ability to work properly. She is easily fatigued." (Tr. 518). He also noted that depression and anxiety both amplify pain. He noted, "Psychologically depressed and anxious people are less resilient and physiologically the chemical factors in the brain that are active in depressive states, exaggerate the brain's neurophysiologic responses to pain." (Tr. 519).

Dr. Yvonne Dalton, psychiatrist, treated Mack from January 19, 2007 through October 17, 2008. Dr. Dalton diagnosed Mack with Bipolar Disorder NOS, Pain Disorder associated with physical factors and general medical condition; and Generalized Anxiety Disorder. (Tr. 1002)

Dr. Birdi completed interrogatories in February 2011. (Tr. 862-871). He believed that the combination of Mack's mental and physical impairments were greater than the sum of the parts. (Tr. 863). She was unable to withstand the pressure of meeting work productivity and work accuracy without significant risk of physical or psychological decompensation or worsening of the physical and mental impairments, relate predictably in social situations,

18

sustain an ordinary routine without special supervision, and work in coordination with, or in proximity to, others without being unduly distracted by them. (Tr. 866-70). Mack also had moderate restrictions in her social functioning, daily activities, and concentration and pace. (Tr. 870-871).

Turning to the ALJ's evaluation of the medical source opinions, the ALJ heavily relied on Mack's part-time work as an LPN at a nursing home to reject the medical sources opinions. Substantial evidence does not support this reason because Mack's part-time work was minimal and did not come anywhere near full-time work. When assessing a claimant's residual functional capacity, an ALJ's decision must comply with Social Security Ruling 96-8p, 1996 WL 374184, which states, in part:

> Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for five days a week, or an equivalent work schedule.

*Id*., 1996 WL 374184 at *2 (italics and bold in original). Mack testified at the first administrative hearing that she still worked on-call as a licensed practical nurse at the nursing home where she was previously employed; however, she was only sometimes able to go in when they called, usually only three to four days a month. (Tr. 47). She stated that the might call her ten times, but she might only go in one of those times. (Tr. 70). She worked, at the most, two days every other weekend. (Tr. 517). Mack also explained that she was

much slower at the job now and needed someone to help her do the heavy lifting, such as

19

transferring a patient from a bed to a wheelchair. (Tr. 48-49). Because of her limited

concentration, she had to write long and detailed notes on the job in order to remember her

assignments. (Tr. 506). As a result, it took her about an hour longer to pass out medications

than it took the other staff members in the same position because she had to double check

the medications so frequently. (Tr. 517). So at best, Mack received accommodations from

her long-term employer that allowed her to continue to perform her work on a part-time

basis. This limited part-time work activity was not inherently contradictory to the opinion

of Dr. Birdi or the other treating and examining medical sources. This all the more since

Mack testified that she had to go to bed for one or two days after working two eight-hour

shifts over the weekend. (Tr. 516, 648, 662-663, 1019).

    In short, the amount of work Mack testified to performing during a month did not

constitute work on a "regular and continuing basis" under Social Security Ruling 96-8p,

1996 WL 374184 at *2 (emphasis omitted).

    Accordingly, for the above reasons, Mack's Statement of Errors is well taken.

**VII.    Reversal and Remand for Benefits**

    If the ALJ failed to apply the correct legal standards or his factual conclusions are not

supported by substantial evidence, the Court must decide whether to remand the case for

rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C.

§405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision

"with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99

(1991). Remand is appropriate if the Commissioner applied an erroneous principle of law,

20

failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A reversal of the ALJ's decision and a judicial award of benefits is warranted in the present case, because the evidence of disability is strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. With the exception of parts of Dr. Buban's testimony some 10 years ago (in June 2003), the medical sources of record, including state record-reviewers, have consistently identified limitations – including marked limitations – in Mack's ability to perform many mental-work activities. Mack also suffers from, as ALJ Lombardo found, the severe impairment of "degenerative disc disease of the cervical spine with residual of functional effects of spinal surgery." (Tr. 700). The evidence of Mack's mental disability is strong while contrary evidence is weak and reveals that the combination of Mack's severe and non-severe impairments rendered her unable to perform work activity on a "regular and continuing" basis before January 1, 2009. In addition to the above-discussed opinions, *supra*, §VI, Mack's counsel has fully, accurately, and convincingly summarized the strong evidence favoring the conclusion that Mack was under a disability before January 1, 2009. *See* Doc. #7, PageID at 43-49, 55-60.

Even if Mack's mental impairments are not considered, the strong evidence of her physical limitations compared to the weak contrary evidence shows that she was under a disability before January 1, 2009. In April 2001, Dr. Chung reported to the State agency that her neck pain interfered with her ability to lift more than 10 pounds occasionally and five

21

pounds frequently. (Tr. 303-04). Walking and standing was limited to more than one to two hours. (Tr. 304). Mack could occasionally climb, balance, stoop, crouch, kneel, and crawl. She was restricted in her ability to reach, handle, finger, feel, and push/pull. (Tr. 305). She was restricted from heights, moving machinery, temperature extremes, vibrations, dust, noise, fumes, and humidity. (Tr. 306). She could not perform even sedentary work activity. (Tr. 307).

The evidence, moreover, establishes that the opinions provided by Mack's treating physician, Dr. Chung, are entitled to controlling weight under the treating physician rule. *See Blakely*, 581 F.3d at 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1520(d)(2). In April 2001, Dr. Chung reported to the State agency that Mack's neck pain interfered with her ability to lift more than 10 pounds occasionally and five pounds frequently. (Tr. 303-04). Walking and standing was limited to more than one to two hours. (Tr. 304). She could occasionally climb, balance, stoop, crouch, kneel, and crawl. She was restricted in her ability to reach, handle, finger, feel, and push/pull. (Tr. 305). She was restricted from heights, moving machinery, temperature extremes, vibrations, dust, noise, fumes, and humidity. (Tr. 306). Mack could not perform even sedentary work activity. (Tr. 307). As Mack's treating physician, Dr. Chung's sedentary-work opinion is entitled to deference. *See Blakely*, 581 F.3d at 406; *see also* 20 C.F.R. §404.1520(d)(2).  Dr. Chung's sedentary-work opinion is based on the clinical and objective medical findings in the record as a whole. His office notes show that she had decreased range of motion of her cervical spine, decreased sensation in her fingertips bilaterally, limited fine manipulation, and tenderness. *See* Tr. 233, 236-237,

317, 574. Physical therapy notes show that she had a reduced range of motion of her cervical spine, tenderness, and decreased upper extremity strength bilaterally. (Tr. 186-187, 189-191)

Dr. Gupta's exams reveal tenderness, muscle spasms, decreased range of motion. (Tr. 343). An MRI of the cervical spine in August 2004 continued to show degenerative changes at multiple levels. (Tr. 568). A EMG on February 6, 2003 demonstrated early mild carpal tunnel syndrome on the right upper extremity. (Tr. 572). A December 2007 MRI demonstrated possible contact with the exiting C4 root nerve at C3-C4, some effacing of the thecal sac at C4-C5, and mild to moderate uncinate hypertrophy and facet arthropathy with some possible "contact and potential left exiting C6 nerve root compromise." (Tr. 821). This indicated a worsening of Mack's condition from her 2004 MRI. (Tr. 568). Additionally, while the reviewing physician opined that Mack could perform light work activity, he specifically found, "Symptoms are attributable to cervical disc problems. Symptoms appear proportionate to medical evidence and the severity of the symptoms is consistent with the medical evidence." (Tr. 262, 266). Considering the extensive record of medical evidence, including the credible and controlling sedentary-work opinion of Mack's treating physician Dr. Chung, along with the three-times repeated absence of proper analysis by the ALJs, an Order remanding this case for benefits is warranted. *See Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994); Listings of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix2, §§201.09, 202.01.

23

**IT THEREFORE IS RECOMMENDED THAT**:

1.    The Commissioner's final non-disability decision be reversed;

2.    Plaintiff Shirley Mack's case be REMANDED to the Social Security
      Administration for payment of benefits, based on her disability onset date of
      March 24, 2000, consistent with the Social Security Act; and

3.    The case be terminated on the docket of this Court.


July 30, 2013                                    _____s/Sharon L. Ovington_____
                                                 Sharon L. Ovington
                                                 Chief United States Magistrate Judge


24

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).

25